NEW ORLEANS, JACKSON AND GREAT NORTHERN RAIL-
ROAD COMPANY *v.* ALLINSON TYSON.

1. DELIVERY OF FREIGHT TO CONSIGNEE BY RAILROAD COMPANY. — Without
a special contract to that effect, a railroad company is not bound to deliver
freight to the consignee, unless such is its custom.

2. NOTICE TO CONSIGNEE OF ARRIVAL OF FREIGHT. — Where it is the custom
of a railroad company to give notice to consignees of the arrival of freight at
its depots, it is its duty to do so, and for failure in this, in a given instance, it
will be liable, not for the value of the goods at the time of their arrival, when
notice should have been given, but for the difference between the then value
and their reduced value at the date of notice to the consignee.

3. DUTY OF CONSIGNEE TO RECEIVE FREIGHT ON NOTICE. — It is the duty
of a consignee on receipt of notice, early or late, to receive the freight and sell
it for such price as it will then bring, crediting the railroad company with the
proceeds, and holding it responsible, if in default, for the difference between
the sum realized and what would have been realized if notice had been
promptly given at the proper time.

4. EXTREME CASE ONLY WILL JUSTIFY REFUSAL TO RECEIVE FREIGHT
BECAUSE OF DEPRECIATION. — It is a very extreme case which will justify a
refusal by a consignee to receive freight because of depreciation or fall in the
price, because of or during delay in transportation.

5. EVIDENCE — IRRELEVANT INADMISSIBLE. — It is error to receive testimony
which neither proves nor tends to prove an issue or fact in the case.

ERROR to the circuit court of Copiah county. MILL-
SAPS, J.

*W. P. Harris*, for plaintiff in error.

The action brought here is for a failure to deliver freight,
an action which is governed by special rules, and requiring
evidence of a special character by the defendant. The
evidence shows that the freight was in fact delivered,
because the contract is fulfilled when the freight is delivered
or carried to the freight depot at the point of delivery, and
the carrier's responsibility terminates as to delivery at that
point. 2 Redf. on Railw., Carr., etc., 51, 52, 53.

On the evidence in the case it appears that the actual
liability, if any, was that growing out of the usage of the
railway company as to notice that the freight had arrived
at the depot.

It is not even shown there was any delay in delivery or any

damage *in transitu* and the case tried was entirely foreign to the action brought. This point is well made by the motion for a new trial, one of the grounds set forth being, that the verdict was contrary to the evidence. What the plaintiff's case would be could not be known until it was developed.

It is submitted, that it cannot be questioned that a plaintiff must prove his case as made in his declaration, in this kind of action. Now, delivery of freight is totally distinct from a failure to notify the consignee, whereby delay in the receipt of the goods was occasioned, whereby loss was sustained by reason of the fluctuation in the market.

Railroad companies are not required to give notice to the consignee of the arrival of freight by any rule of law, but where it is their custom to do so this renders them liable for any loss sustained by a neglect to notify the consignee. Authority before cited, 2 Redf. on Railw. and Car., 52, 53, and authorities cited in notes.

Now it seems plain that proof which only shows delay in giving this notice does not sustain a declaration for non-delivery. The spirit of the laws of pleading and evidence is averse to a practice of this kind.

But, considering the case on the question of fact, as to notice to the consignee, it is apparent that the verdict is palpably against the weight of evidence. It is a case in which negative evidence (not, indeed, in conflict with positive testimony) has been taken by the jury as the basis of their verdict. The positive evidence is : An uniform custom to deliver notices; an officer whose duty it was to give such notice ; a notice, which was indeed a demand for cost of freight.

The explicit declaration of the officer, that such notice was left at the office of the consignee twice, is opposed by the simple declaration of the consignee that he did not receive it. He was not in when the notice was left, and its delivery at his office, in the presence of the clerks of the house, was a compliance with the custom of the company,

and his swearing that he did not get, or see the notice cannot alter the rule nor overturn the positive evidence.

It is apparent, moreover, that he knew the freight had arrived. He had been admonished to expect it. He had sent parties to see it who had proposed to bring it.

The secret of his conduct is found in the manifest purpose on his part to sell the hoop poles as they lay at the depot, and those who thought of buying them refused, because of the quality of the poles.

He had neglected his business, or the consignor had neglected his as to inquiry, and the effort was to throw the loss on the much-enduring back of the railroad company. A critical examination of the evidence will show that an inferior and unmarketable bale of hoop poles was forced on the railroad company.

The first instruction is erroneous because it asserts the principle that the delay in giving notice is equivalent to the failure to deliver.

*Yergers & Nugent,* on same side.

The measure of damages in this case was the difference between what the hoop poles would have sold for in November and what they would have sold for in January, when the market had fallen one-half.

In January the road was in this situation, admitting that they had not given the consignees notice. They had the freight ; it had fallen one-half since the time when the notice should have been given. They had no right to sell, and the consignees had. They should, therefore, have sold the goods and charged the road with the difference between the price received and the amount for which they could have been sold in November. How then was it that the jury came to estimate the damages so high then in this case ? It was simply because they were misled by the first instruction of the defendant in error in this case. That instruction compelled the jury to estimate the damages on a basis of the full market price at the time when the poles should

have been delivered in November, whereas the measure of damages was not the full market price in this case, but it was the difference between the amount for which they would have sold in November and their market value in the latter part of December or January, when Smith & McKenna had notice of their arrival, and sent to see about the same.    It is no excuse to a consignee to refuse to receive goods because there is a depreciation in price between the time when the goods arrive and the time when they should have arrived.    His duty to all parties is to take the goods, sell to best advantage, and if the carrier is in default, charge him with the difference.

This first instruction complained of is as follows : " That if the jury believe from the evidence that the defendants received the poles in question as freight at Wesson to carry to New Orleans, La., and that they failed to give the consignees notice of their arrival in a reasonable time, and that thereby the poles were lost to the plaintiff, then they should find for the plaintiff, and assess his damages according to the value of the poles at the time when the notice should have been given, according to the evidence in this case."

This instruction, as an abstract rule of law, may be correct and applicable to some cases, but in the case before the court it is too broad, and fixes a rule and measure of damages under which the jury were compelled to find their excessive verdict.    That instruction it was error in the court to give without some modification or restriction.    It should have contained a proviso to the effect that "if the jury, however, believe that the consignees had notice of the arrival of the goods in the month of December or January, it was their duty to receive and sell the same for what they were worth, in which case the measure of damages would be the difference between the price for which they sold and the market value in November."    12 N. Y. 509 ; 22 Barb. 278.

Besides this, there is another error in the record ; it is in the ruling of the court in reference to the letters between Wilks and others.    In the first place, this letter of Wilks

should not have been read to the jury ; it contained irrelevant matter, and was calculated to mislead and prejudice the case before the jury, containing, as it did, such expressions as, "I cannot give you the receipt," and "have been treated so badly about it," etc. These expressions were calculated to prejudice the case before the jury, and the letter should not have been read.

*George L. Potter,* for defendant in error.

The judgment should be affirmed. 1st. The evidence objected to as improperly admitted is a note from Wilks, the agent of the company. It was objected to only as "irrelevant to the issue joined." In view of the other proof for defendant in error, this letter does not seem important to his case, but it was not a matter to which the company could object, and if the note was wholly "irrelevant" its admission was not to the prejudice of the company. 2d. The next error assigned is the refusal of the fifth instruction asked for plaintiff in error. This charge was properly refused, as erroneous in law, and impertinent to the issue. Moreover, the company, sued as a common carrier, by its written notice, filed with the general issue, admits the due shipment of the hoop-poles and their due conveyance to New Orleans, as freight, and thus waives all possible controversy attempted to be raised by this charge. Nor was it proper to direct the jury to "find for the defendants," even though the company was not, in this instance, a common carrier. 3d. The motion for a new trial was properly refused. There was a conflict of testimony upon the only matter of defense set up in the notice, viz. : due notice to the consignees of the arrival of the freight in New Orleans. It was incumbent on the company to prove that defense, and it failed to establish the alleged notice. The consignees and their clerk were witnesses in the cause, and they denied that such notice was given to them. A clerk of the company, Theard, was examined, but he does not prove any delivery of notice to the consignees. From his

answer to interrogatory three it would seem that he did deliver notice, but his answer to interrogatory four shows that he only prepared the notice and handed it to Behan, another clerk of the railroad ; and the only witness to prove delivery of the notice is Behan. He does not pretend that he delivered any notice to either of the consignees. He only swears that he delivered it "at the office" of the consignees on the day after arrival of the freight ; but he does not say to whom he delivered the notice, nor that he delivered it to any one or even placed it in the office. He only swears he "delivered" it "at the office," but whether the office was then open or closed is not stated. Being afterward requested again to notify the consignees, he says : "Which I did by giving it to a young man seated at the desk" in the office of the consignees. He calls him "the man," and does not pretend that he belonged to the office. The presumption is that he was a stranger, casually there. In answer to first interrogatory, he says that "about a year after the second notice he saw one of the consignees," etc. This is immaterial. On the contrary, Smith & McKenna, the consignees, swear they were not notified. Raum, clerk of the consignees, also swears that no notice was given to them. Upon such evidence the jury was compelled to say the defense was groundless. The evidence of Drane, for the company, is worthless. He speaks of hoop-poles seen by him, but does not identify them, nor say in what year he saw them. Moreover, he does not speak to the only point of defense, viz. : the alleged default of the plaintiff, or his consignees, after the freight reached New Orleans. It was not error to refuse proof, by Wilks, of the contents of a letter written by him to a clerk of the company, and the contents of his letter in reply. No reason or excuse was shown for such a novel proceeding. The damages are not excessive ; defendant in error remitted $100 of the verdict. 4th. The proof shows that the company was derelict in this. It left the hoop-poles exposed to the weather, so that they became worthless ; it did not shelter

them as it was bound to do, even if the consignees did, upon being notified, neglect or refuse to receive them. In such case the carrier has his remedy, but he cannot leave the goods exposed, and then plead notice given to excuse such negligence.

TARBELL, J.:

At the April term, 1868, of the Copiah county circuit court Allenson Tyson brought his action against the New Orleans, Jackson & Great Northern Railroad Company, for that, in 1867, the said Tyson, at Wesson, shipped upon the railroad of defendants, who were common carriers for hire, six thousand barrel hoop-poles, of the value of $300, and two thousand half-barrel hoop-poles, of the value of $100, to be carried to New Orleans, La., and there to be delivered to Smith & McKenna, for a reasonable charge, to be paid by Smith & McKenna, but the defendants, disregarding their undertaking in this behalf, and their duty as common carriers, so negligently and carelessly conducted themselves in regard to the said hoop-poles, that they did not deliver the said hoop-poles to the said Smith & McKenna, but, on the contrary, the said hoop-poles were wholly lost to the plaintiff, to his damage $500. The defendant pleaded the general issue, with notice that they would prove the due arrival of the hoop-poles at their depot in New Orleans, of which fact they notified the consignees of plaintiff.

Upon the trial the testimony was conflicting as to the value of the hoop-poles, and as to the fact of notice of their arrival to the consignees. The jury returned a verdict for the plaintiff for the full amount claimed, and from the judgment thereon the defendants below prosecute this writ of error.

The declaration alleges an undertaking, on the part of the defendants, to deliver the hoop-poles to Smith & McKenna, and claim damages for a failure so to deliver. We regard this as material. 2 Redf. on Railways, § 157, p. 50. There was no proof upon the trial of an undertaking to deliver

the goods to Smith & McKenna. Without a special con-
tract they would not be bound so to deliver, unless in accord-
ance with their custom. . Delivery of freight at the end of
routes to consignees is mostly confided to express compa-
nies, but was formerly, in some instances, undertaken by
railroad companies, and is frequently done by other common
carriers. There is no dispute in this case that the freight
was promptly delivered at the depot of defendants. The
testimony on the trial was, as to the usual notice to the
consignees of the arrival of the freight, and trial proceeded
upon the theory that the plaintiff was entitled to recover the
value of the property at the date of its delivery at the depot.
Notice to consignees by railroads, of the arrival of freight,
depends upon the custom of the company. Redf. on Rail-
ways. Such appears to be the custom of the New Orleans,
Jackson and Great Northern Railroad Company, and hence
it was their duty to give it in this instance. The action,
however, is not in form for a failure to give this notice. The
rule of damages adopted by the court and jury was as in
case of non-delivery of freight; the neglect to give the notice
being treated as equivalent to non-delivery of the goods.
The goods were shipped in November. The consignor was
in New Orleans to look after his property, the last of Decem-
ber or early in January, thereafter. On that occasion, as
testified by one of consignees, a clerk of the firm was sent
to the depot of defendants to look after the hoop-poles,
which, he states, were found in an unmarketable condition,
hoop-poles having declined fully one-half in price from the
date of shipment to the time of such examination. The
witness says, "had they been delivered in time, he could
have obtained the full market value, from forty-five to fifty
dollars." Both Smith & McKenna testify, that they never
received any notice of the shipment or arrival of hoop-poles
from any one, until the arrival in New Orleans of the con-
signor. The clerk of Smith & McKenna testifies, that they
did receive a letter from the consignor, advising them of the
intended shipment, and another letter a few weeks after,

inquiring if the poles had been received. The clerk states, that he went to the depot on the arrival of the consignor, to see the condition of the poles, and found them unmarketable, owing to their long exposure and the fall in the market. This witness further says, "I would not take them in that condition, after having remained there so long without giving us notice, and pay what I thought the unjust charges made by the road."

It appears from the testimony of Smith & McKenna that they employed several clerks, as McKenna speaks of George E. Raum, the last witness quoted, as " one of our clerks." Only this one was examined as a witness on the trial of this cause. The agent of the defendants, whose duty it was to notify consignees of the arrival of freight at the depot, testifies that he left a notice of the arrival of the hoop-poles with a person writing at a desk in the office of Smith & McKenna, with a verbal request to attend to them and take them away. Upon the theory of non-delivery, the rule of damages followed was correct. We have been inclined, however, to consider this a case of damages for delay in giving notice to the consignees of the arrival of the freight. Smith & McKenna, the consignees, and their clerk, all testify to their refusal to receive the poles early in January, because of their unmarketable condition and depreciation of their market value, or fall in price from date of arrival to that time, a period of about six weeks, together with want of notice and high charges of freight, but depreciation in value or fall in market price is not a sufficient ground on which to decline to receive the property. If he tells the truth the agent of the company left two notices at the office of the consignees. One of these he says he left with some one writing at a desk in their office in their absence. Whether left on a desk in their absence, or with one of their clerks, it was sufficient. It might have been delivered to a clerk not a witness on the trial, as it seems they had several, of whom witness Raum was only one.

From an inspection of the record we apprehend the true

rules governing this case were overlooked or disregarded. The errors beginning in the declaration run through the entire trial and are embodied in the first instruction for the plaintiff, to wit: "If the jury believe from the evidence that the defendants received the poles in question as freight, at Wesson to carry to New Orleans, La., and that they failed to give the assignees notice of their arrival in a reasonable time, and that thereby the poles were lost to the plaintiff, then they should find for the plaintiff and assess his damages according to the value of the poles at the time when the notice should have been given according to the evidence in this cause."

Upon the theory of delivery of goods or notice, the measure of damages was not the full market value of the hoop-poles on their arrival in New Orleans (there being in this case no question of their prompt transportation to the depot of defendants), but the difference between the then value, and their value (alleged to have fallen off greatly) at the date of notice to the consignees, upon the assumption that such notice was unreasonably delayed. It was, upon this theory, the duty of the consignees, upon notice, early or late, to receive the freight and sell it for such price as it would then command, crediting to the railroad company the proceeds, the difference between such sum and the amount which would have been realized when notice ought to have been given, being the damages which the company should make good to the plaintiff. It is a very extreme case which will warrant the refusal of freight on account of depreciation or fall in the price, because of or during delay.

In this case there was no demand and refusal, and no conversion of the property of plaintiff by defendants. The rule stated in case of delay is, therefore, the proper one. Any other in such case would be unjust and iniquitous, leading to frauds and perjuries innumerable. If depreciation is caused by delay, or prices fall pending dilatory delivery, and these causes could be made the ground of forcing freights upon railroads, they would become the

forced purchasers of all the millions of property in the country whereof the market value fluctuates. See 2 Redf. on Railways, § 151, sub. 6, 7, 8; ib. 163, 164, § 173, sub. 2, 4; ib. § 175, sub. 2; ib. 146; Sedgw. on Damages, 406.

If we correctly interpret the instruction copied above, it assumes that notice was given to the consignees, but was not given in reasonable time. The instruction then proceeds to state the rule of damages thus: "That if, thereby, the poles were lost to the plaintiff, the jury would assess the market value of the poles at the time when the notice should have been given." According to the record, the poles were not "lost to the plaintiff," but only that they had depreciated, and the price had fallen. If there was non-delivery, the rule of damages would be as first above referred to; but in case of unreasonable delay in delivery, or in giving notice of arrival, the rule last mentioned would govern. Delivery or non-delivery, as of notice to assignees, or unreasonable delay in giving such notice, are questions of fact for the determination of the jury. Hence, both the above rules ought, perhaps, to have been stated to the jury as matters of law, with instructions, that, as they should find the facts, they would apply these rules. However, assuming the facts in the record to be correct, we are of the opinion that it was the duty of the consignees to receive and sell the hoop-poles, looking to the railroad company for the difference, as before explained, especially in view of the grounds upon which the refusal to receive the poles was put.

The letter from Wilks to the plaintiff, received in evidence, neither proved nor tended to prove any issue or fact in the case. It could not, possibly, have had any other effect than to prejudice the defendant's case. Its reception in evidence was, therefore, erroneous.

*The judgment is reversed and the cause remanded.*