J. J. Jackson & Son, Plaintiffs in Error, v. New York
Central & Hudson River Railroad Company
et al., Defendants in Error.

## Gen. No. 15,791.

1. COMMON CARRIERS—*when conversion of shipment not established.*
A failure by a carrier to inform of arrival of shipment as required, in
the event of subsequent delivery upon demand to the consignor, does
not establish a conversion.

2. COMMON CARRIERS—*what delivery not required.*  A carrier is not
bound to deliver to a consignee at its place of business in the absence
of a contract or custom established.  It is however the duty of the

carrier to notify a consignee of the arrival of the shipment and to place it on the tracks or other proper place where the consignee can take the shipment.

3. COMMON CARRIERS—*when not liable for depreciation.* The consignee upon notice and delivery at a proper place is bound to remove a shipment within a reasonable time. From the time that the consignee has notice of the arrival of the shipment and a reasonable time has elapsed for its removal the shipment· is at the risk of the consignee and no liability attaches to the carrier for subsequent depreciation in value.

4. MEASURE OF DAMAGES—*when carrier fails promptly to notify of arrival of shipment.* In such a case the measure of damages is the difference between the market value of the shipment in question at the proper time and place of delivery and the market value at the same place on the date when the shipment was tendered by the carrier. Provided, further, that if the market price at the date when delivery should have been made exceeded the price at which the same had been sold the measure of damages would be the difference between the market value at the date when the purchaser refused to accept the shipment and the selling price plus the damage, if any, by reason of the negligence of the carrier in not making prompt delivery.

5. EVIDENCE—*how market values may be established.* Market values may be established by the testimony of experts who qualify by showing knowledge of quotations gained by letters and wires.

Error to the Municipal Court of Chicago; the HON. WILLIAM W. MAXWELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed February 14, 1912.

**Statement by the Court.** The plaintiffs in error, J. J. Jackson & Son, sued the defendants in error, final and initial carriers, respectively, to recover for loss and damage sustained on a car-load shipment of barreled apples delivered in good order, October 29, 1907, to the defendant in error, New York Central & Hudson River Railroad Company, at Middleport, New York, to be transported and delivered to "J. J. Jackson & Son, Notify Hudson Cold Storage Company, Hudson, Wisconsin," routed "Ohio Street, Buffalo, care Western Transit Company, Care North Western Line at Milwaukee." The car was hauled by defendant in error, New York Central, to Ohio street, Buffalo, and the contents of the car there delivered to the West-

ern Transit Company, a boat line running from Buffalo to Milwaukee. At Milwaukee the apples were delivered to the Chicago & Northwestern Railway Company, which in turn delivered them to the Chicago, St. Paul, Minneapolis & Omaha Railway Company, which transported the apples in due time to Hudson, Wisconsin, November 6, 1907. The original car initial and number on the bill of lading was N. O. & N. E. 16579, but en route, without knowledge of the plaintiffs in error, the contents were transferred to E. F. G. car 61,092, and when the waybilling under which the car moved reached Hudson, the words "Notify Hudson Cold Storage Company," were omitted, and by reason thereof no notice of the car's arrival was received by the Hudson Cold Storage Company until about November 16th after the car's arrival. The plaintiffs in error, having sold the apples at $4.35 a barrel, on a delivery order to the Hudson Cold Storage Company, drew their sight draft for $761.25 on that company, attached the bill of lading, and placed both with their bank at Hudson. The draft was dishonored because the Hudson Cold Storage Company could not obtain the apples in the time agreed, and the Storage Company, about November 16th, declined to accept the shipment, having previously bought apples elsewhere to fill its orders after it had made repeated inquiries of the defendant's agent for the apples and after they had arrived at Hudson. On December 2, 1907, a representative of the Produce Reporter company appeared on behalf of plaintiffs in error, accepted the car and attempted to make a sale of the apples in Hudson; but could not do so because there was then no market at that place for apples, the buyers having been previously supplied. The car of 175 bbls. was then ordered to Minneapolis and sold for $3 per barrel about December 18, 1907. Plaintiffs in error's claim is for $377.86 loss by reason of delay in transportation, based upon the differ-

ence between the price for which the plaintiffs in
error had sold the apples on November 6th and the
price realized by them at Minneapolis on December
18th, plus incidental expenses. The court entered
judgment in favor of plaintiffs in error against the
defendants in error for nominal damages of one dol-
lar and costs of suit, after a trial without a jury. This
writ of error brings before us for review the judg-
ment rendered by the Municipal Court.

FREDERICK S. BAKER, for plaintiffs in error.

WINSTON, PAYNE, STRAWN & SHAW, for defendants
in error; GEORGE B. WINSTON, of counsel.

MR. JUSTICE DUNCAN delivered the opinion of the
court.

Plaintiffs in error argue that there was a conversion
of the apples by the defendants in error after reach-
ing their destination, as demand was frequently made
for the apples by the Hudson Cold Storage Company
after their arrival at destination, and such demand
was refused by the agent of the defendants in error.
For the same reason, it is claimed that the proper
measure of damages is the difference between the
market value of the apples at Hudson on the 6th day
of November, when they ought to have been delivered,
and the price for which they were sold in Minneapolis
plus the necessary expense of re-shipping the apples,
commissions, etc. As a further basis for this meas-
ure of damages, it is said that there was no market
for the apples at Hudson from December 2nd, the
time they were actually delivered to plaintiffs in error,
up to and including December 18, 1907, the day on
which the apples were sold. We do not think the
evidence shows a conversion of the goods by the de-
fendants in error. The shipment was made to J. J.
Jackson & Son with directions to notify the Hudson

Cold Storage Company, and that company could not obtain the apples from the defendants in error without the surrender of the bill of lading. The Cold Storage Company refused to take up the draft and the bill of lading because the agent of defendants in error continued to inform it that no such car of apples had arrived, until after the Storage Company had supplied itself with apples elsewhere. It is proved also that plaintiff in error demanded and received the apples about December 2nd. The evidence simply shows a negligent delay on the part of the defendants in error in notifying the Storage Company of the arrival of the car, by reason of their negligent failure to direct their agent by their way-bill to "notify Hudson Cold Storage Company." Scovill v. Griffith, 12 N. Y. Court of Appeals, 509; Zinn v. N. J. Steamboat Co., 49 N. Y. Court of Appeals, 442; N. O. J & G. N. R. R. v. Tyson, 46 Miss. 729; Hutchinson on Carriers, 3rd Ed., Sec. 1372.

The defendants admit that they were negligent as aforesaid, and that they are "liable for any damages properly proven." For any unreasonable delay, either in the transportation or the delivery of freight after its arrival at destination, common carriers are liable. The defendants in error were not bound to deliver the apples to the consignee at its place of business in the absence of a contract or custom to do so; but they were bound to notify the consignee of the arrival of the apples and to place them on their tracks or other proper place where the consignee could take them. Until they did so their stringent liability as common carriers continued. The consignee upon such notice and delivery was bound to remove the apples within a reasonable time. From the time that the consignee had notice of the arrival of the apples and a reasonable time had elapsed for their removal, they were at the risk of the plaintiffs

in error, and no liability attached to the defendants in error for subsequent depreciation in value. Zinn v. N. J. Steamboat Company, *supra*.

The measure of damages in such a case is the difference between the market value of the apples in question at Hudson, November 6, 1907, the date of their arrival and on which the Storage Company should have received them, and the date on which they were tendered to it by the defendants in error, about November 16, 1907. Hutchinson on Carriers, 3rd Ed., Sec. 1366; Ward v. R. R. Co., 47 N. Y. Court of Appeals, 29; L., N. A. & C. Ry. Co. v. Heilprin & Co., 95 Ill. App. 402.

The foregoing rule should be modified by the further statement that if the market price at Hudson on November 6th should exceed the price of $4.35 per barrel, the price for which plaintiffs in error had sold the apples, the measure of damages would be the difference between the market value at the date the Cold Storage Company refused to accept them, and the selling price of $4.35 per barrel, plus the damage, if any, by reason of the apples being frosted by reason of the negligence of the defendants in error. If, however, the market value on Nov. 6th should be less than $4.35 per barrel, the defendants in error could not be held by such value unless it be shown that they were apprised, prior to the shipment of the apples from New York, that the plaintiffs in error had sold the apples for such price on delivery by November 6th. Only the actual damages of the plaintiffs in error can be recovered, such as were necessarily contemplated by the parties in case of negligence as aforesaid.

The plaintiffs in error did not make very definite proof as to the time the Cold Storage Company got notice of the arrival of the car at Hudson. The defendants in error's claim that it was about November 16th is somewhat supported by the evidence. For

the foregoing reason it does not definitely appear by the evidence what was the market value of the apples in question on this date. It is definitely proved that within a few days thereof, or about the last of November, there was no market for the sale of apples at Hudson, because all the buyers there were well supplied. Until it is definitely proved that there was no market value for the apples on the day the Cold Storage Company refused to accept them, plaintiffs in error were not entitled to the difference in the market value of the apples November 6th at Hudson, less the net sum received for them by sale in the Minneapolis market, as their damages, unless the evidence further showed that this net sum received at Minneapolis was equal to or greater than the market value of the apples at Hudson on the date the Cold Storage Company refused to accept the apples.

The court ruled in this case that there was no proof of the market value of the apples in question at Hudson on November 6th, the day the apples arrived at Hudson, and sustained objections of the defendants in error to all of the evidence of the plaintiffs in error bearing thereon. In this ruling we think the court was in error. John J. Jackson, one of the plaintiffs in error, testified by deposition that he was familiar with the condition and prices of apples of the quality and kind shipped by plaintiffs in error to the Hudson Cold Storage Company, on November 6, 1907, and that those apples were worth on the open market at that place on that day $4.50 per barrel. George B. Higgins testified by deposition that he had been in the wholesale fruit and produce business exclusively for twenty-seven years, and that he was familiar with the market value of apples of the quality and kind in question at Hudson, Wisconsin, on or about November 6, 1907, and that they were then worth $4.35 to $4.50 per barrel. The objections made and sustained to these questions were to the effect that no qualifica-

468        APPELLATE COURTS OF ILLINOIS.

J. J. Jackson & Sons v. N. Y. C., Etc., R. R. Co., 167 Ill. App. 461.

tions of the witnesses to testify as experts were shown, and that the said Jackson could not know such market prices in Hudson. The last objection was evidently based upon the fact that the witness did not live at Hudson, and hence could not have personal knowledge of the facts to which he testified. Market values are usually obtained from others by letter or wire or by other similar methods. The best posted men on markets and market values usually depend upon such means for such knowledge. The said witnesses in this case qualified and their testimony was competent. Their means of knowledge, if it had been shown, and the extent of their knowledge, would have been proper considerations only in determining the weight of their evidence. There being no other testimony opposing their evidence upon this point, the court erred in not considering and treating it as satisfactory proof of such fact. Laurent v. Vaughn, 30 Vt. 90; Lush v. Druse, 4 Wendel (N. Y.) 313.

After the court had ruled out all of the evidence of plaintiffs in error pertaining to the market value of the apples in Hudson on November 6th, the same being apparently all the evidence within their possession that could be offered at the trial, it was not within their power to properly prove their damages under the rulings of the court. Similar evidence offered as to market values of the apples at Hudson at any other time would have been unavailing, whether excluded or not by the court, as it was necessary for the plaintiffs in error to have the benefit of their proofs as to the market value of the apples at Hudson on November 6th, in order to establish a proper basis for recovery of actual damages. We think, therefore, that the error in the court's rulings is such as to entitle plaintiffs in error to another trial, as the evidence tends to show that plaintiffs in error were entitled to recover more than mere nominal damages.

The judgment of the lower court is accordingly reversed and the cause remanded.

*Reversed and remanded.*