AMERICAN RY. EXPRESS CO. *v.* PITTS.

[91 South. 570. No. 22526.]

1. CARRIERS. *Express company which failed to make delivery or return shipment within reasonable time liable for depreciation in value caused by its negligence.*

   Where a shipper delivered an express company two bales of hides with shipping tag to return in five days unless delivered, and fails to make delivery or to return shipment for an unreasonable time, and by reason of its negligence the shipment becomes practically valueless, it is liable to the shipper for the depreciation in value caused by its negligence.

2. CARRIERS. *Carrier, having elected to keep goods until opening of market for such goods, liable to shipper for value of shipment.*

In such case, where, owing to the delay, the market has closed for the season, and in view of such fact the express company elects to keep the goods until the market opens again for such commodity, it becomes liable for the value of the shipment and cannot thereafter force the shipper to accept and dispose of the shipment as a condition of recovering from the carrier.

APPEAL from circuit court of Lauderdale county.

HON. J. D. FATHEREE, Judge.

Action by L. S. Pitts against the American Railway Express Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Baskin & Wilburn,* for appellant.

We submit that counsel are in error in their views about the case of *Railroad* v. *Tyson,* 46 Miss., *supra.* They seem to be under the impression that in the Tyson case the suit was merely for the difference between the market value of the goods at the time that they were actually delivered and at the time when they should have been delivered. Or, in other words, that the case involved merely the decline in market value and that there had been no change in the condition of the goods.

We do not so read the Tyson case. In the Tyson case, it is stated: "It is a very extreme case which will warrant the refusal of freight on account of depreciation or fall in the price, because of or during delay." The other parts of the opinion show clearly that, in the language quoted above, the "depreciation" referred to was that of the goods themselves.

Then further on, the court says this: "If depreciation is caused by delay, or prices fall pending dilatory delivery, and these causes could be made the ground of forcing freights upon railroads, they would become the forced purchasers of all the millions of property in the country whereof the market value fluctuates."

This language is to be interpreted in the light of the testimony set out in the opinion, and on page 736 of the

said Tyson case it is stated by the court that a witness for the consignees of the shipment was sent "to look after the hoop-poles, which, he states, were found in an unmarketable condition, hoop-poles having declined fully one-half in price from the date of shipment to the time of such examination.

The court adds, at top of page 736 of Tyson case: "that this clerk found them unmarketable, owing to their long exposure and the fall in the market." Again the court says: "That the consignees testified to their refusal to receive the poles early in January, because of their unmarketable condition and depreciation of their market value, or fall in price from date of arrival." Again the court says on page 739: "According to the record the poles were not lost to the plaintiff, but only that they had depreciated, and the price had fallen."

Clearly, therefore, the rule of the Tyson case was invoked and applied in any instance where there was depreciation in the quality and condition of the shipment owing to exposure during delay to give notice of its arrival at New Orleans, as well as a decline in market, and neither of these things were held to justify a refusal to accept the shipment.

So, in the case at bar, there was no conversion of the goods. They came back to Meridian in the original package, unopened, and with nothing having happened to the shipment, except that some worms had eaten into the shipment and injured some of the furs. The goods were not without value.

They ought to have been accepted by the appellee and there was no conversion, and the instructions of the court that authorized a recovery upon the theory of a conversion, and that authorized recovery for the full amount, which was had, were contrary to the law and evidence, we submit, and the appellee should not have had judgment in any view for the full amount sued for.

*Stevens & Heidelberg,* for appellee.

The third and last ground urged by the counsel for appellant for reversal of this case is that it was the duty of the appellee to have received the furs in their damaged and practically worthless condition, when they were tendered to him in the middle of May, and that having failed to receive them, he was not entitled to recover.

In the first place, we say in response to this that this argument goes solely and alone to the question of damages and in any event the plaintiff would have been entitled to recover the full amount sued for, less the sum of one hundred and fifty dollars, which is the very most that the jury could have believed, under the testimony, that the furs were worth. However, we submit that the plaintiff had a right, even aside from the fact that the testimony showed that the express company elected to keep the furs and dispose of them themselves, he had a right to refuse this delivery. The only case cited by counsel for appellant in support of this contention, that of *New Orleans, Jackson & Great Northern R. R. Co.* v. *Tyson,* 46 Miss. 729, does not at all sustain him in this contention. In the *Tyson case, supra,* there was no damage whatever to the shipment. It was a suit merely for the difference between the market value of the goods at the time when they should have been delivered. It was a case of where there had been merely a decline in the market value of the goods and the court in that case on those facts held that it was the duty of the consignee to accept the goods and dispose of them to the best advantage. There had been no change in the condition of the goods. They were the same goods which were delivered to the carrier, tendered to the consignee in exactly the same condition in which they were received by the Railroad Company; they were, in fact, the consignee's goods without change in their nature or character, and in no way injured or damaged but merely because the market value of the goods had declined, the consignee refused to accept them, and on this statement

of facts the court held that he wrongfully refused to accept them. But even in the Tyson case, the court did not hold that the owner of the goods must always, under all circumstances accept them, but on the contrary, it held that in extreme cases the owners of goods have been even warranted in the refusal of the freight on account of depreciation or fall in the price. See page 738, of the decision.

Counsel also cites in support of this contention, 10 Corpus Juris, p. 307, but this authority is also dealing with the decline in the market price of goods, as a result of which damage was sustained, and even it states that there is an exception to the rule. We quote from the very section cited by counsel: "Also, it has been held that a consignee of goods which are of little or trifling value and unsalable may refuse to accept them when tendered after a negligent delay in transportation thereof, and may recover damages and the statutory penalty for failure to adjust and pay the claim within the statutory time after filing thereof."

If there had been no damage to the goods themselves, even if the goods had been in the same condition as when originally delivered to the express company, the appellee under the above rule, and the facts of this case, would have been justified in refusing the shipment because of the difference in value only. This shipment was worth over one thousand nine hundred dollars when delivered to the express company; when tendered back to the appellee the greatest value which any of the testimony placed upon it was one hundred and fifty dollars, less than ten per cent. of its original value, a mere trifle as compared with the original value thereof and, in addition to this, tendered back at a time when the furs were unsalable, when there was no market therefor, and when there would not be any market therefor for several months to come. And, in addition to this, testimony showed that the express company elected to keep these furs and handle them themselves. Pitts testified that he offered to receive the furs, and handle them to the best advantage, but that he would expect the

express company to pay him any damage which he had sustained by reason of their negligence. He had a lawful right to do this. The law required of the express company that it pay this damage, and he was demanding nothing more or less than what rights and remedies of the law gave him, and yet the agent of the express company refused to do this, and stated himself that he preferred to handle them on behalf of the express company. Having elected to do this, this was a conversion under the law, and regardless of any other facts in the case, would justify recovery of the full amount sued for upon the theory of conversion. And another fact which justifies a recovery for the full amount in this case is that regardless of the opinion of witnesses as to the value of these furs when tendered back to the appellee, the after-developed facts demonstrated conclusively that these furs had no value at that time. The proof showed that in order to handle the furs at all, after they were delivered back, it was necessary that the bugs be knocked out and the furs placed in cold storage. The proof showed that this was done by the express company in this case, and that the value of the furs at the date of the trial was not as much as the charges which the express company was attempting to collect from the appellee for the handling of these furs in cold storage.

This case presents such a flagrant violation of the duty which the express company owed the appellee, and is such a case as will be ground to appeal to the fairness of this court, that we deem no extended brief necessary. We feel that any extended discussion or argument of this case would be almost an insult to the intelligence of this court. If an express company can receive and handle goods as it received and handled the goods in this case in utter disregard of the rights of shippers and owners of goods; if they can keep these goods for sixty days, and until they have become absolutely worthless and trash, and then dump them back on the shipper, and escape liability because of his refusal to accept the goods then what rights have shippers left?

For the foregoing reasons we submit that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, trading as the Southern Fur & Hide Company, shipped a consignment of two bales of raw furs C. O. D. to Brown Bros. & Co., Chicago, Ill. The shipment was made from Meridian, Miss., April 21, 1920. According to the plaintiff, a card was attached to the shipment directing the consignment to be returned after five days if not delivered. The furs were consigned at the value of one thousand nine hundred and twenty-seven dollars, which the plaintiff says was the market value of them. They were bundled and burlapped in the manner required by the express company, and the shipment was marked, "Raw furs." According to the evidence, it would take about three days for the shipment to reach Chicago. The goods were not called for at Chicago by the consignee, and the express company sent a postal card to the consignor stating the fact of nondelivery with notation that consignee would call. This card was not properly addressed to the consignor at his address 507 Twenty-Fifth avenue, Meridian, Miss., but was addressed to him at 507 Twenty-Fifth street, Meridian, Miss., and for some reason was not received by the consignor until the 9th day of May. On the 10th day of May the appellee, the consignor of the shipment, gave written notice to the consignee at Chicago that if the shipment was not taken out within three days after receipt of that letter to return the shipment to Meridian, Miss. The shipment was not returned in accordance with said direction, and on the 19th day of May the plaintiff telegraphed the express company at Chicago with reference to said shipment. Thereafter on the 24th day of May the plaintiff wrote the express company again demanding a return of the shipment and notified the express company that it would be held liable for damages if it was not properly returned. The shipment was not so returned.

and the plaintiff employed an attorney, who on the 10th day of June wrote a letter to the express company demanding the immediate return of the shipment. The shipment was returned on the 14th day of June to Meridian and tendered to Pitts, who declined to receive it unless allowed to inspect the shipment. He was permitted to inspect the shipment and learned from inspection that the hides had become infected with worms and also had become grease burned, and their value largely destroyed, besides the market for the season had closed at that time. The shipper refused to receive the bundles in their then condition, except he offered to take them and handle them for the express company's account.

According to the plaintiff's version of the transaction, the company elected to retain the furs until the market opened again so as to procure a better price than could be procured on the then market. After the shipper refused to accept the furs in their condition, the express company consulted a dealer in furs as to the best disposition to make of the furs, and this dealer advised the company to have the worms knocked out and the furs placed in cold storage, which was done, but the furs were never sold by the express company or taken out of storage until at the date of trial. The proof shows that the insects which infect the hides with worms begin to operate the latter part of May or the first of June and continue through the summer months. It further shows that it is not necessary to have the furs in cold storage in the winter months. On the trial the express company produced the furs in court and tendered them to the plaintiff, who refused to receive them unless the express company would consent that they be sold and the purchase price be paid in court subject to the determination of the litigation, which offer the express company did not agree to.

It is contended by the appellant that it should have had a peremptory instruction, because the damage to the furs was caused by inherent defects in the shipment. And paragraph 4 of the bill of lading contained the following stipulation:

"Paragraph 4. Unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by—

"(a) The act or default of the shipper or owner.

"(b) The nature of the property, or defect or inherent vice therein.

"(c) Improper or insufficient packing, securing or addressing."

The proof shows that the shipment, if promptly delivered, or in the absence of delivery if promptly returned, would not have been infected with the worms in question and that the furs could have been sold to other buyers. The express company in Chicago notified the consignee by written notice and afterwards sent the consignment to the office of the consignee who noted that on the bill, "Will call." It fails to show any further effort to deliver the goods or to return them, but contends that there was no card attached to the shipment when it reached them directing such return. The proof of the plaintiff shows that when the goods was delivered to the express company such notice was attached to the shipment.

After the receipt of the notice of May 10th to the Chicago office, no effort seems to have been made to either deliver the shipment or return it to the consignor. The Chicago office did not have apparently in its files the correspondence as the deposition of its employees shows. The deposition shows the consignee Brown Bros. & Co., was closed a good part of the day each day, but it does not show any effort on the part of the express company to find Brown brothers at their office during their business hours, nor was the shipment returned in accordance with instructions, nor is there any reasonable excuse shown for failure to return the shipment.

It is further contended that when the shipment was returned it was the duty of the consignor to take the shipment unconditionally and dispose of it to the best advantage so as to minimize its damage, and, if this was not done, that the plaintiff cannot recover, and the authority·

of *New Orleans, J. & G. N. R. R. Co.* v. *Tyson,* 46 Miss. 729, is relied upon to sustain this position, as is also 10 C. J. 307, section 444.

The evidence on the part of the plaintiff shows that the company agreed or rather elected to retain the shipment and hold for a better price than to let the plaintiff sell the furs to the best advantage and hold them for the difference. And if this be true and the jury by its verdict accepted it as being true, the rule stated would not prevail. The evidence shows at the time the shipment was returned to Meridian that there was no market for the furs and in addition the shipment was badly damaged. To have sold the furs at that time would have been practically to destroy all value and result in practically a total loss to one party or the other.

The rule is stated in 10 C. J., p. 307 et seq.:

"Also it has been held that a consignee of goods which are of little or trifling value and unsalable may refuse to accept them when tendered after a negligent delay in transportation thereof, and may recover damages in the statutory penalty for failure to adjust and pay the claim within the statutory time after filing thereof."

In the present case the value of the goods in their damaged condition is so slight compared to their original value and the market was closed so there could be but little hope of realizing anything at the time the shipment was returned to Meridian; but, whatever may be the correct rule as to the duty of the plaintiff to take the shipment unconditionally and sell it for the purpose of diminishing his damages and suing for the difference in the market value, under the circumstances here disclosed, the rule can have no operation where the express company elects to retain the shipment and dispose of it at a later time for a better advantage. We think the contentions of the appellant on the facts in this record are without merit, and the judgment should be affirmed.

*Affirmed.*